### UNITED STATES DISTRICT COURT
### FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| **TOP TOBACCO, L.P. and REPUBLIC TOBACCO, L.P.,** | ) | |
| | ) | Case No. |
| Plaintiffs, | ) | |
| | ) | Hon. |
| vs. | ) | |
| | ) | |
| **8021 AA INC., D/B/A "1ST STOP TOBACCO"; 8021 FF, INC., D/B/A "EXPRESS TOBACCO"; CHEAP TOBACCO ON RIDGE #2, INC., D/B/A "CHEAP TOBACCO"; AND MALVAN INC., D/B/A "TOBACCO & CIGAR",** | ) | JURY TRIAL DEMANDED |
| Defendants. | | |

## COMPLAINT FOR INJUNCTIVE AND OTHER RELIEF

Plaintiffs Top Tobacco, L.P. and Republic Tobacco, L.P. (hereinafter together referred to as "Plaintiffs"), by and through their undersigned counsel, for their Complaint against 8021 AA Inc., d/b/a "1st Stop Tobacco"; 8021 FF, Inc., d/b/a "Express Tobacco"; Cheap Tobacco on Ridge #2, Inc., d/b/a "Cheap Tobacco"; and Malvan Inc., d/b/a "Tobacco & Cigar" (collectively, the "Defendants"), hereby allege as follows:

## NATURE OF THE CASE

1.      This is an action involving infringement of registered trademarks and unfair competition under the Lanham Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.*, violations of Illinois unfair-competition laws, and violations of state common law provisions.  Plaintiffs own numerous federal trademark registrations for use in connection with cigarette rolling papers as well as registrations for use in connection with, among other things, tobacco and smokers' articles (together, the "TOP Marks," described with particularity in paragraph 20).

2. Plaintiffs bring this action in response to Defendants' infringing and unlawful conduct and in order to protect one of Top Tobacco's most valuable assets, namely, the goodwill and consumer recognition in its well-known TOP Marks, which Top Tobacco and its predecessors have used for over 100 years in connection with smoking tobacco and for over 60 years with cigarette rolling papers. Republic Tobacco and its predecessors have been the exclusive U.S. distributors of Top Tobacco's TOP-brand products since before the acts of Defendants alleged herein.

3. More specifically, this action arises out of Defendants' violations of the federal trademark laws, the state statutes and the state common law by means of their knowing, willful and intentional displaying, distributing, selling, offering for sale and/or trafficking in products that purport to be Plaintiffs' authentic and trademarked TOP-brand products, but which are actually counterfeit. Defendants are responsible for and/or have benefitted from the distribution and sale of counterfeit TOP branded and labeled products, which are inferior in quality and design to Plaintiffs' legitimate, trademarked products. Defendants have significantly harmed Plaintiffs' rights and confused the consuming public and will continue to do so unless and until the relief requested herein is granted.

**PARTIES**

4. Plaintiff Top Tobacco, L.P. ("Top Tobacco") is a Delaware limited partnership, and maintains its principal place of business at 2301 Ravine Way, Glenview, Illinois 60025.

5. Plaintiff Republic Tobacco, L.P. ("Republic Tobacco") is a Delaware limited partnership, and maintains its principal place of business at 2301 Ravine Way, Glenview, Illinois 60025. Republic is a wholesaler, distributor and retailer of tobacco and is the master distributor

of TOP-branded products in the United States. (Top Tobacco and Republic Tobacco are collectively referred to herein as "Plaintiffs.")

6. On information and belief, Defendant 8021 AA Inc., d/b/a 1st Stop Tobacco ("1st Stop"), is an Illinois corporation located at 8021 183rd Street, Suite A1, Tinley Park, Illinois 60487. On information and belief, 1st Stop operates as a retailer of tobacco products.

7. On information and belief, Defendant 8021 FF, Inc., d/b/a Express Tobacco ("Express Tobacco"), is an Illinois corporation located at 8021 183rd Street, Suite F, Tinley Park, Illinois 60487. On information and belief, Express Tobacco operates as a retailer of tobacco products.

8. On information and belief, Defendant Cheap Tobacco on Ridge #2, Inc., d/b/a Cheap Tobacco ("Cheap Tobacco"), is an Indiana corporation with its principal place of business located at 15 Ridge Road, Munster, Indiana 46321. On information and belief, Cheap Tobacco operates as a retailer of tobacco products.

9. On information and belief, Defendant Malvan Inc., d/b/a Tobacco & Cigar ("Tobacco & Cigar"), is an Indiana corporation located at 304 Ridge Road, Munster, Indiana 46321. On information and belief, Tobacco & Cigar operates as a retailer of tobacco products.

## JURISDICTION AND VENUE

10. This Court has personal jurisdiction over Defendants because they have engaged in business activities in, and directed to, the State of Illinois and within this judicial district, because Defendants have knowingly committed tortious acts aimed at and causing harm within the state of Illinois and this judicial district, and because Plaintiffs suffered harm within this judicial district as a result of Defendants' acts complained of herein.

11.     Plaintiffs' claims are, in part, based on violations of the Lanham Act of 1946, as amended, 15 U.S.C. § 1051 *et seq.*  This Court has jurisdiction over the subject matter of Counts 1 – 3 pursuant to 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331 and 1338.  This Court has jurisdiction over Counts 4 – 7 pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because those claims are so related to the federal claims arising under the Lanham Act that they form part of the same case or controversy and derive from a common nucleus of operative facts.

12.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because, among other things, upon information and belief, (1) Plaintiffs and Defendants transact business in this judicial district, (2) Defendants are subject to personal jurisdiction in this judicial district, (3) a substantial part of the events giving rise to Plaintiffs' claims occurred in this judicial district, and (4) the intellectual property alleged to be damaged by Defendants' acts is owned by Plaintiffs in this judicial district.  Furthermore, the harm to Plaintiffs described herein continues to occur in this judicial district.

## ALLEGATIONS COMMON TO ALL CLAIMS

**Plaintiffs' Business and Top Tobacco's TOP Marks.**

13.     For many years, Top Tobacco, its predecessors and affiliates, including Republic Tobacco and its predecessors, have been engaged in the distribution and sale of smoker's articles, including tobacco and related products such as cigarette rolling papers.  One market in which Plaintiffs compete is the "roll-your-own" market, in which Plaintiffs distribute tobacco and cigarette papers, sold both together and separately.  Top Tobacco, through its exclusive master distributor Republic Tobacco, distributes such goods to distributors, wholesalers, retailers, resellers and consumers across the United States through tobacco shops, drugstores, tobacco outlets, convenience stores, gas station mini marts, novelty, cash and carry and other

retail stores. As a result, Top Tobacco has become one of the best-known manufacturers of tobacco and tobacco-related products. By volume of leaves, Top cigarette papers are the largest selling cigarette papers in the United States.

14. The TOP-brand of tobacco is one of the oldest tobacco brands in the United States. Top Tobacco's predecessors first began to use the TOP Marks with tobacco in the United States in the early 1900s. Thus, for over 100 years, Top Tobacco and its predecessors have used the TOP Marks continuously in connection with tobacco, and over those many decades, TOP has become one of the best-known brands of tobacco in the United States. In fact, TOP is the leading selling brand of roll-your-own tobacco by volume in the United States. (The TOP Marks are described with particularity in paragraph 20.)

15. Since Top Tobacco's predecessors' first use of the TOP Marks with tobacco over 100 years ago, the range of smoking-related products with which the TOP Marks have been used has expanded. Beginning in or around the early 1940s, Top Tobacco's predecessors began using the TOP Marks with cigarette papers. Through Top Tobacco's and its predecessors' continuous use of the TOP Marks with cigarette papers, TOP also has become one of the best-known brands of cigarette papers in the United States.

16. Top Tobacco manufactures its TOP-brand tobacco and sells it to Republic Tobacco. Republic Tobacco is the exclusive master distributor of Top Tobacco's TOP-brand products, and sells those products nationwide to wholesalers, retailers such as convenience, gas station minimart, drug and food stores, mass merchandisers, cash-and-carry businesses and tobacco outlet chains. In the past five years alone, Republic Tobacco has sold tens of millions of dollars worth of smoking tobacco and cigarette papers under Top Tobacco's TOP Marks.

17.     Republic Tobacco promotes and advertises Top Tobacco's high-quality TOP-brand products.  For years prior to the conduct of Defendants alleged herein, Republic Tobacco and its predecessors have devoted significant time, effort and resources to marketing and promoting smoking tobacco and cigarette papers under the TOP Marks.  In fact, Republic Tobacco and its predecessors have spent millions of dollars promoting the TOP Marks and Top Tobacco's products sold in connection therewith.

18.     As a result of the many decades of continuous and extensive use of the TOP Marks in interstate commerce in connection with tobacco and cigarette papers, Top Tobacco's TOP Marks have developed considerable recognition.  Top Tobacco has worked diligently to establish—and now owns—considerable and valuable goodwill in and symbolized by its TOP Marks.

19.     As a result of Plaintiffs' and their predecessors' use and extensive promotion of the TOP Marks in connection with tobacco and cigarette papers, the TOP Marks have become well known and recognized by the public as identifying and distinguishing Top Tobacco's products.  This consumer goodwill and recognition in the TOP Marks constitutes one of Top Tobacco's most valuable assets.  Accordingly, the integrity of Top Tobacco's TOP Marks is extremely valuable to Top Tobacco and is crucial to the continued vitality and growth of its business.

20.     Top Tobacco maintains federal trademark registrations including, among others, Registration No. 2,739,465 (the "Design Mark") and Registration No. 2,831,105 (the "Word Mark") for use in connection with cigarette rolling papers.  (Together, these registrations are referred to herein as the "Paper Marks.")  Top Tobacco also maintains federal trademark registrations including, among others, Registration Nos. 2,293,958; 2,739,466; 3,029,855;

3,407,400; 3,677,986; 3,677,987; 3,710,606; 3,720,176; and 3,918,139 for word and design marks used in connection with, among other things, tobacco and smokers' articles. (Collectively, these registrations are referred to herein as the "Tobacco and Tobacco Products Marks.")  Copies of the registration records for Registration Nos. 2,739,465; 2,831,105; 2,293,958; 2,739,466; 3,029,855; 3,407,400; 3,677,986; 3,677,987; 3,710,606; 3,720,176; and 3,918,139 are collectively attached hereto as Exhibit 1.  (Together, the Paper Marks and Tobacco and Tobacco Products Marks are referred to herein as the "TOP Marks.")  Each of Top Tobacco's foregoing trademark registrations are valid, subsisting, and in full force and effect.

21.     U.S. Registration Nos. 2,739,465; 2,831,105; 2,293,958; 2,739,466; 3,029,855; 3,407,400; 3,677,986; 3,677,987; 3,710,606; 3,720,176; and 3,918,139, each of which is owned by Top Tobacco, have become incontestable within the meaning of 15 U.S.C. §§ 1065 and 1115(b).

22.     Top Tobacco has acquired significant common law rights in the TOP Marks for use with its goods.

23.     The TOP Marks at issue in this case have been continuously used and have never been abandoned.

24.     TOP-brand products are manufactured and sourced exclusively for, and under the direction of, Republic Tobacco, and such products are sold through Republic Tobacco.

**Defendants' Knowing Distribution and/or Resale of Counterfeit Goods.**

25.     Plaintiffs maintain an anti-counterfeiting program to protect against violations of the TOP Marks.  Plaintiffs have become aware that Defendants, well after Top Tobacco first used and developed strong goodwill in its TOP Marks, have been offering for sale what purport to be authentic TOP cigarette rolling papers bearing the TOP Marks but which are, in fact,

counterfeit and/or infringe TOP-branded and TOP-labeled products.  By their conduct, Defendants have been knowingly and willfully violating the TOP Marks and Top Tobacco's trademark rights.  As described below, Defendants' deliberate conduct has significantly impacted Plaintiffs because Defendants are trafficking in large quantities of counterfeit merchandise and selling this counterfeit merchandise, thereby violating Plaintiffs' rights under federal and Illinois law.

26.     Upon information and belief, Defendants have sold legitimate TOP-brand products in the past and know that all so-called "TOP" rolling paper inventory is counterfeit because it was obviously packed and identified differently.

**Plaintiffs' Investigators' Purchases of Counterfeit Goods from 1st Stop Tobacco, Express Tobacco, Cheap Tobacco, and Tobacco & Cigar.**

27.     On July 18, 2016, investigators hired by Republic (the "investigators" or the "investigator") purchased what purported to be TOP-brand cigarette rolling papers from Cheap Tobacco and Tobacco & Cigar.

28.     Shortly thereafter, samples of the product purchased from Cheap Tobacco and Tobacco & Cigar were sent to Republic Technologies (France) SAS ("Republic Technologies"), the manufacturer of the legitimate product, for testing.  Republic Technologies confirmed that all of the samples from Cheap Tobacco and Tobacco & Cigar were counterfeit.

29.     Republic Technologies determined that, among other things, (1) the glue used on the counterfeit paper is different from the glue used on authentic TOP-brand papers, (2) there is a discrepancy between the color of the blue leaves of the counterfeit paper and the color of authentic TOP-brand papers, (3) the cover of the counterfeit papers is different from the cover for the authentic TOP-brand papers and (4) the boxes containing the counterfeit papers

purchased at Cheap Tobacco are enclosed with cellophane, which is inconsistent with the packaging for authentic TOP-brand papers.

30.     On August 26, 2016, the investigators again purchased what purported to be TOP cigarette rolling papers from Cheap Tobacco and Tobacco & Cigar.

31.     Shortly thereafter, samples of the product purchased from Cheap Tobacco and Tobacco & Cigar were sent to Republic Technologies in France for testing.   Republic Technologies again determined that all samples from Cheap Tobacco were counterfeit and that four booklets from Tobacco & Cigar were counterfeit.   (Forty-three booklets from Tobacco & Cigar were determined to be authentic TOP product.)

32.     Republic Technologies determined that, among other things, (1) the glue used on the counterfeit paper is different from the glue used on authentic TOP-brand papers, (2) there is a discrepancy between the color of the blue leaves of the counterfeit paper and the color of authentic TOP-brand papers and (3) the cover of the counterfeit papers is different from the cover for the authentic TOP-brand papers.

33.     On August 26, 2016, investigators also purchased what purported to be TOP cigarette rolling papers from 1st Stop Tobacco and Express Tobacco.

34.     Shortly thereafter, samples of the product purchased from 1st Stop Tobacco and Express Tobacco were sent to Republic Technologies in France for testing.   Republic Technologies determined that all samples from 1st Stop Tobacco and Express Tobacco were counterfeit.

35.     Republic Technologies determined that, among other things, (1) the glue used on the counterfeit paper is different from the glue used on authentic TOP-brand papers, (2) there is a discrepancy between the color of the blue leaves of the counterfeit paper and the color of

authentic TOP-brand papers and (3) the cover of the counterfeit papers is different from the cover for the authentic TOP-brand papers.

36.     On October 5, 2016, the investigators again purchased what purported to be TOP cigarette rolling papers from 1st Stop Tobacco and Express Tobacco.

37.     Shortly thereafter, samples of the product purchased from 1st Stop Tobacco and Express Tobacco were sent to Republic Technologies in France for testing. Republic Technologies again determined that all samples from 1st Stop Tobacco and Express Tobacco were counterfeit.

38.     Republic Technologies determined that, among other things, (1) the glue used on the counterfeit paper is different from the glue used on authentic TOP-brand papers, (2) there is a discrepancy between the color of the blue leaves of the counterfeit paper and the color of authentic TOP-brand papers and (3) the cover of the counterfeit papers is different from the cover for the authentic TOP-brand papers .

39.     Plaintiffs have examined the papers purchased from 1st Stop Tobacco, Express Tobacco, Cheap Tobacco, and Tobacco & Cigar and have made the following determinations, which show that Defendants have and continue to (i) intentionally, knowingly and willfully represent their merchandise as TOP-brand products when they are, in fact, "colorable imitations" and/or "counterfeits" of Plaintiffs' authentic TOP-brand cigarette rolling paper as those terms are defined in 15 U.S.C. § 1127 (ii) with the specific intention to confuse and deceive the public. Specifically, these cigarette rolling papers include labels, graphics and logos that counterfeit and are confusingly similar to, and/or are colorable imitations of, the authentic TOP-brand products and the TOP Marks.  Additionally, the cigarette papers do not match the specification of

authentic TOP-brand products, notwithstanding Defendants' efforts to portray these items as authentic TOP-brand products, and thus are confusing the public.

## FIRST CLAIM FOR RELIEF

### (15 U.S.C. § 1114(1)(a) - Trafficking in Goods Bearing Counterfeit TOP Marks)

40.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41.     This claim arises under the provisions of the Lanham Act of 1946, as amended, 15 U.S.C. § 1114(1)(a), and is for the infringement and counterfeiting of trademarks registered in the United States Patent and Trademark Office by Plaintiffs.

42.     Top Tobacco owns and has rights to use its federally registered TOP Marks in connection with, among other things, cigarette rolling papers, tobacco, smokers' articles and related goods.

43.     Defendants use the mark "TOP," in connection with counterfeit rolling paper, tobacco, and other tobacco products, which are goods that are the same as, or related to, the goods on which Top Tobacco uses its TOP Marks.

44.     "TOP" is identical to the TOP Marks in sight, sound, and commercial impression.

45.     Plaintiffs have not authorized Defendants' use of any of the TOP Marks to advertise, offer for sale, sell and/or distribute Defendants' counterfeit merchandise.

46.     Top Tobacco's rights in its TOP Marks predate Defendants' first use of the TOP Marks.

47.     Defendants' counterfeit use of the "TOP" mark on or in connection with the advertising and sale of goods constitutes use in commerce.

48.     Defendants' willful, knowing and intentional distribution, sale and offer for sale of counterfeit merchandise is in violation of 15 U.S.C. § 1114(1)(a) and is likely to create confusion, or to cause mistake, or to deceive; cause the public to believe that Defendants' products are authorized, sponsored or approved by Plaintiffs when they are not; and result in Defendants unfairly and illegally benefitting from Plaintiffs' goodwill, causing damage to Plaintiffs' goodwill, and causing damage to the public which counts on Plaintiffs' products having a certain level of quality.

49.     Accordingly, Defendants have engaged in trademark counterfeiting in violation of 15 U.S.C. §1114(1)(a), and are liable to Plaintiffs for all damages related thereto, including without limitation, actual damages, infringing profits and/or statutory damages, as well as attorneys' fees.

50.     Plaintiffs have been, are now, and will be irreparably harmed by Defendants' aforementioned wrongful acts, unless enjoined by this Court.  There is no adequate remedy at law for the harm caused by the wrongful acts alleged herein.

51.     Defendants' egregious conduct in knowingly selling counterfeit merchandise bearing the unauthorized TOP Marks is willful and intentional, and thus this constitutes an exceptional case.

52.     In light of the high probability of success for Plaintiffs in a trial on the merits, the likelihood of irreparable damage that will be caused by the sale of counterfeit merchandise, the hardships that have been and are continuing to be dealt to Plaintiffs on a daily basis to both its finances and its reputation, plus the harm that will come to unsuspecting consumers of counterfeit merchandise, injunctive relief is warranted in order to prevent Defendants from continuing to violate the Trademark Act.

53.     Wherefore, Plaintiffs pray for the relief requested below.

## SECOND CLAIM FOR RELIEF

### (15 U.S.C. § 1114 - Infringement of Federally Registered Trademarks)

54.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 53 of this Complaint as if fully set forth herein.

55.     Top Tobacco owns and has rights to use its federally registered TOP Marks in connection with, among other things, cigarette rolling papers, tobacco, smokers' articles and related goods.

56.     Top Tobacco's rights in its TOP Marks predate Defendants' first use of the TOP Marks.

57.     Defendants' use of the TOP Marks in connection with the sale, offering for sale, distribution or advertising of among other things, cigarette rolling papers, tobacco and smokers' articles is likely to cause confusion, or to cause mistake, or to deceive, in violation of Section 32 of the Lanham Act, as amended, 15 U.S.C. § 1114.

58.     As a direct and proximate result of Defendants' unauthorized use of the TOP Marks, Plaintiffs have suffered and will continue to suffer substantial injury and irreparable damage to its business, reputation and goodwill.

59.     By using the TOP Marks without Plaintiffs' approval or consent, and with knowledge of Plaintiffs' rights in its TOP Marks, Defendants have willfully infringed upon the rights of Plaintiffs, with an intent to trade upon the fame and goodwill associated with Plaintiffs' TOP Marks.

60. Plaintiffs have been, are now and will be irreparably harmed by Defendants' aforementioned wrongful acts, unless enjoined by this Court. There is no adequate remedy at law for the harm caused by the wrongful acts alleged herein.

61. Wherefore, Plaintiffs pray for the relief requested below.

## THIRD CLAIM FOR RELIEF

### (15 U.S.C. § 1125(a) - False Designation of Origin)

62. Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 61 of this Complaint as if fully set forth herein.

63. This claim arises under Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a), and alleges Defendants' use in commerce of false designations of origin and false descriptions and representations.

64. Through longstanding use, Top Tobacco owns and has rights to use numerous TOP Marks in connection with, among other things, cigarette rolling papers, tobacco, smokers' articles and related goods.

65. Top Tobacco's rights in its TOP Marks predate Defendants' first use of the TOP Marks.

66. The trademarks of Top Tobacco and, specifically, the TOP Marks, are in full force and effect and Republic Tobacco is the exclusive distributor of products with these marks.

67. The TOP Marks are nationally recognized, including within the Northern District of Illinois, as being affixed to goods and merchandise of the highest quality and coming from a single source, Republic Tobacco.

68. Defendants' use of the TOP Marks in connection with the sale, offering for sale, distribution or advertising of, among other things, cigarette rolling papers, tobacco and smokers'

14

articles is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection or association of Defendants with Plaintiffs, or as to the origin, sponsorship or approval of Defendants' goods or commercial activities by another person, in violation of Section 43(a) of the Lanham Act, as amended, 15 U.S.C. § 1125(a).

69.     As a direct and proximate result of Defendants' unauthorized use of the TOP Marks, Top Tobacco has suffered and will continue to suffer substantial injury and irreparable damage to its business, reputation, and goodwill.

70.     By using the TOP Marks without Plaintiffs' approval or consent, and with knowledge of Top Tobacco's rights in its TOP Marks, Defendants have willfully infringed upon Plaintiffs' rights, with an intent to trade upon the goodwill associated with the TOP Marks.

71.     The intentional nature of Defendants' aforementioned wrongful acts also makes this an exceptional case pursuant to 15 U.S.C. § 1117.

72.     Plaintiffs have been, are now and will be irreparably harmed by Defendants' aforementioned wrongful acts, unless enjoined by this Court.  There is no adequate remedy at law for the harm caused by the wrongful acts alleged herein.

73.     Wherefore, Plaintiffs pray for the relief requested below.

<div align="center">

**FOURTH CLAIM FOR RELIEF**

**(815 ILCS 510/1 *et seq.* - Violation of Illinois Uniform Deceptive Trade Practices Act)**

</div>

74.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 73 of this Complaint as if fully set forth herein.

75.     Defendants have used and are using the TOP Marks in connection with the sale, offering for sale, distribution, promotion or advertising of its goods in commerce in such a

manner as to cause a likelihood of confusion or of misunderstanding as to the source, sponsorship, approval or certification of its goods or services.

76.     As a direct and proximate result of Defendants' unauthorized use of the TOP Marks, Plaintiffs have suffered and will continue to suffer substantial injury and irreparable damage to its business, reputation and goodwill.

77.     By using the TOP Marks without Plaintiffs' approval or consent, and with knowledge of Plaintiffs' rights in its TOP Marks, Defendants have willfully infringed upon the rights of Plaintiffs, with an intent to trade upon the fame and goodwill associated with Plaintiffs' TOP Marks.

78.     Defendants' acts complained of herein thus violate the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq*.

79.     Plaintiffs have been, are now and will be irreparably harmed by Defendants' aforementioned wrongful acts, unless enjoined by this Court.  There is no adequate remedy at law for the harm caused by the wrongful acts alleged herein.

80.     Wherefore, Plaintiffs pray for the relief requested below.

## **FIFTH CLAIM FOR RELIEF**

### **(815 ILCS 505/1 *et seq.* - Violation of Illinois Consumer Fraud and Deceptive Business Practices Act)**

81.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 80 of this Complaint as if fully set forth herein.

82.     Defendants' acts complained of herein violate the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1 *et seq.*

83.     Plaintiffs have been, are now and will be irreparably harmed by Defendants' aforementioned wrongful acts, unless enjoined by this Court.  There is no adequate remedy at law for the harm caused by the wrongful acts alleged herein.

84.     Wherefore, Plaintiffs pray for the relief requested below.

<div align="center">

**SIXTH CLAIM FOR RELIEF**

**(Common Law Trademark Infringement)**

</div>

85.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 84 of this Complaint as if fully set forth herein.

86.     Top Tobacco owns all rights, title and interest in and to the TOP Marks, including all common law rights in such marks.

87.     Defendants, without authorization from Plaintiffs, have used and are continuing to use spurious designations that are identical to, substantially indistinguishable from or confusingly similar to the TOP Marks.

88.     The foregoing acts of Defendants are intended to cause, have caused and are likely to continue to cause confusion and mistake among consumers, the public and the tobacco trade as to whether Defendants' counterfeit products originate from, or are affiliated with, sponsored by or endorsed by Plaintiffs, especially because Defendants have been offering counterfeit product for sale alongside authentic product.

89.     On information and belief, Defendants have acted with knowledge of Top Tobacco's ownership of the TOP Marks and with the deliberate intention or willful blindness to unfairly benefit from the incalculable goodwill symbolized thereby.

90.     Defendants' acts constitute trademark infringement in violation of the common law of the state of Illinois.

91.     On information and belief, Defendants have made and will continue to make substantial profits and/or gains to which they are not in law or equity entitled.

92.     On information and belief, Defendants intend to continue their infringing acts, unless restrained by this Court.

93.     Defendants' acts have damaged and will continue to damage Plaintiffs, and they have no adequate remedy at law.

94.     Wherefore, Plaintiffs pray for the relief requested below.

## SEVENTH CLAIM FOR RELIEF

### (Common Law Unfair Competition)

95.     Plaintiffs repeat and reallege the allegations contained in paragraphs 1 through 94 of this Complaint as if fully set forth herein.

96.     The foregoing acts of Defendants constitute unfair competition in violation of the common law of the state of Illinois.

97.     Upon information and belief, Defendants have made and will continue to make substantial profits and/or gains to which they are not in law or equity entitled.

98.     On information and belief, Defendants intend to continue their unlawful acts, unless restrained by this Court.

99.     Defendants' acts have damaged and will continue to damage Plaintiffs, and they have no adequate remedy at law.

100.    Wherefore, Plaintiffs pray for the relief requested below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray for the following relief:

1.     That judgment be entered as follows:

a.   Defendants violated the anti-counterfeiting provisions of 15 U.S.C. § 1114(1);

b.   Defendants infringed Plaintiffs federally registered trademarks pursuant to 15 U.S.C. § 1114;

c.   Defendants' unlawful use of the TOP Marks in interstate commerce constitutes false designation of origin, pursuant to 15 U.S.C. § 1125(a);

d.   Defendants violated the Illinois Uniform Deceptive Trade Practices Act;

e.   Defendants violated the Illinois Consumer Fraud and Deceptive Business Practices Act;

f.   Defendants have infringed Plaintiffs' common law trademark rights; and

g.   Defendants have in the past, and are currently, unfairly competing with Plaintiffs.

2.   An order requiring that Defendants, their subsidiaries, officers, agents, servants, employees, owners and representatives, and all other persons or entities in active concert or participation with them, be permanently enjoined and restrained from:

a.   making any unauthorized use of the TOP Marks, or any reproduction, counterfeit, copy or colorable imitation thereof, or any other of Plaintiffs' marks, in connection with the sale of any goods or offering of any services;

b.   manufacturing, distributing, advertising, marketing, promoting, offering for sale or selling any goods, wares or services, including, but not limited to, all rolling papers, or any other goods with marks or trade dress that look confusingly similar to any of the TOP Marks, as well as any other forms of markings, packaging, labels, wrappers, containers, articles, products, displays, signs, circulars, kits, literature, materials, receptacles, catalogs, price lists, promotional materials or Websites and the like bearing a reproduction, counterfeit, copy or colorable imitation of the TOP Marks;

c.   using any mark, trade dress, design, statement or representation that may be calculated to falsely represent or that has the effect of falsely representing that the services or products of Defendants are in any way sponsored by, originate with or associated or approved by Plaintiffs;

d.   falsely representing itself or its goods or services as affiliated, connected, associated or approved by Plaintiffs;

e.   advertising, marketing, promoting, offering for sale, selling, importing, exporting, distributing and/or transferring rolling papers and related products complained of herein and/or anything confusingly similar thereto, or any reproduction, counterfeit, copy or colorable imitation thereof, and/or any other of the TOP Marks, through any means whatsoever, including, but not limited to, retail, wholesale, via the Internet, mail order, telephone or any other method of inter- or intrastate commerce;

f.   doing any other act or thing calculated or likely to cause confusion or mistake in the minds of members of the public, including prospective customers of Plaintiffs, as to the source of the goods offered, distributed, marketed, advertised, or sold by Defendants, or as to whether there is a connection between Plaintiffs and Defendants; and

g.   assisting, aiding or abetting any other person or entity in engaging in any of the acts set forth in (a) through (f) above;

3.   An order that all products, labels, packaging, wrappers, signs, prints, banners, posters, brochures, catalogs or other advertising, promotional or marketing materials, in Defendants' possession, custody or control, or in the possession, custody or control of any of its agents, that feature any of the TOP Marks and/or any other goods that may infringe Plaintiffs' Marks, be removed and destroyed, along with the means for making the same;

4.   An order that Defendants file with this Court and serve upon Plaintiffs within thirty days after entry of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which Defendants have complied with the injunction entered by this Court;

5.   Damages in an amount to be proven at trial sufficient to compensate Plaintiffs for all damages caused by Defendants' conduct, with such damages to be trebled if appropriate within the Court's discretion;

6.   An order awarding Plaintiffs statutory damages pursuant to 15 U.S.C. § 1117(c) based on the maximum amount available of two million dollars ($2,000,000) per counterfeit mark, per type of good offered or sold;

7.      Disgorgement of all profits or other unjust enrichment obtained by Defendants as a result of Defendants' conduct complained of herein, with the amount of such profits increased to the extent they are inadequate to compensate Plaintiffs for the harm incurred as a result of Defendants' acts;

8.      All allowable costs associated with this action;

9.      Plaintiffs' attorneys' fees under 15 U.S.C. § 1117 and/or 815 ILCS 510/3;

10.     Pre- and post-judgment interest; and

11.     Any and all additional relief this Court deems just under the circumstances.

Dated:  November 15, 2016                  KATTEN MUCHIN ROSENMAN LLP


By: /s/ Sheldon T. Zenner

Sheldon T. Zenner
Allison M. Freedman
KATTEN MUCHIN ROSENMAN LLP
525 W. Monroe St.
Chicago, Illinois 60661
(312) 902-5200

*Attorneys for Plaintiffs*
*Top Tobacco, L.P. and*
*Republic Tobacco, L.P.*

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiffs demand a trial by jury.

Dated:  November 15, 2016

<div style="margin-left:40%">

By: /s/ Sheldon T. Zenner

Sheldon T. Zenner
Allison M. Freedman
Katten Muchin Rosenman LLP
525 W. Monroe St.
Chicago, Illinois 60661
(312) 902-5200

*Attorneys for Plaintiffs*
*Top Tobacco, L.P. and*
*Republic Tobacco, L.P.*

</div>